FILED
MAY - 2 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    100 F Street, NE<br>    Washington, DC  20549<br>            Plaintiff,<br><br>v.<br><br>DEEPHAVEN CAPITAL MANAGEMENT, LLC<br>and BRUCE LIEBERMAN,<br>            Defendants. | Civil No.<br><br>COMPLAINT<br><br>CASE NUMBER   1:06CV00805<br>JUDGE: Richard J. Leon<br>DECK TYPE: General Civil<br>DATE STAMP: 05/02/2006 |

Plaintiff Securities and Exchange Commission ("the Commission") alleges for its complaint against Deephaven Capital Management, LLC and Bruce Lieberman as follows:

### NATURE OF THE ACTION

1.    This action involves insider trading by Defendants Deephaven Capital Management, LLC ("Deephaven") and Bruce Lieberman ("Lieberman") in connection with certain Private Investment in Public Equity ("PIPE") offerings of stock. From August 2001 to March 2004, Deephaven and Lieberman engaged in short selling of securities in advance of the public announcements of 19 PIPE offerings[1] that are the subject of this Complaint while in possession of material nonpublic information, in breach of a duty of trust and confidence owed to the placement agents for the PIPE securities and to the PIPE issuers.

---

[1]   The PIPE offerings that are the subject of this Complaint are:  AuthentiDate Holding Corp. (January 2004), Central European Distribution Corp. (March 2003), Dave & Buster's Inc. (August 2003), Factory 2-U Stores Inc. (August 2003), FARO Technologies Inc. (November 2003), GTC Biotherapeutics Inc. (July 2003), Hi-Tech Pharmacal Co. Inc. (July 2003), I-Flow Corp. (September 2003), Insmed Inc. (July 2003), Neurobiological Technologies Inc. (March 2004), Orchid BioSciences Inc. (February 2004), OSI Systems Inc. (December 2001), Overland Storage Inc. (May 2003), Penwest Pharmaceuticals Co. (August 2003), Roxio Inc. (June 2003 and January 2004), ThermoGenesis Corp. (March 2004), Tower Automotive Inc. (September 2001), and Vital Images Inc. (June 2003).

2.  For each of the PIPE offerings here at issue, Deephaven and Lieberman executed short sales for the Deephaven Small Cap Growth Fund LLC (the "Small Cap Fund") while in possession of knowledge of an impending PIPE offering, which they knew or were reckless in not knowing was material nonpublic information, in breach of a duty owed to the placement agents and issuers to maintain confidentiality and not disclose or trade on the basis of such information. Moreover, for two of the offerings, Lieberman attempted to hide the short positions previously established in the Small Cap Fund by transferring them to another Deephaven fund he managed.

3.  By conduct detailed in this Complaint, Deephaven and Lieberman violated Section 17(a) of the Securities Act of 1933 ("the Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION

4.  The Court has jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1, and 78aa].

## DEFENDANTS

5.  Deephaven is an investment adviser headquartered in Minnetonka, Minnesota. Deephaven was an unregistered investment adviser until January 27, 2006, when it became registered with the Commission under the Investment Advisers Act of 1940. It manages several private hedge funds for institutions and high net worth individuals. Deephaven is the investment adviser for the Deephaven Market Neutral Master Fund, LP (the "Fund"), a private hedge fund with $ 1.5 billion in assets under management as of December 31, 2005. The Deephaven Market

Neutral Fund LLC is a private hedge fund that invests substantially all of its assets in the Fund. The Small Cap Fund is a sub-fund managed within the Fund. Deephaven is compensated by both a flat management fee and a percentage of profits earned for the Fund. Deephaven is a subsidiary of Knight Capital Group, Inc., a Nasdaq-traded public company (symbol: NITE).

6. Lieberman, age 50, is a Minnesota resident. He was an employee of Deephaven from 1997 until January 2005 and was its Director of Private Placements. He managed and made all trading decisions for the Small Cap Fund.

## FACTS

### A. Each Issuer's Plan to Offer a PIPE in the 19 Deals Was Material Nonpublic Information

7. A PIPE is a private investment in public equity. In a PIPE offering, an underwriter or "placement agent" privately places restricted securities of a public company ("the issuer") with investors who meet certain financial criteria ("accredited investors"). Accredited investors enter into a securities purchase agreement with the issuer, committing to purchase a certain number of shares in the offering at a specified price, which generally will be priced at a discount to the market price of the issuer's stock at the time the offering is publicly announced. The issuer agrees, in turn, to register the shares with the Commission within a specified period after the public announcement so that the investors can resell their shares to the public.

8. Because a PIPE offering increases the supply of stock available in the market and is issued at a discount, it generally decreases the share price of smaller capitalized PIPE issuers that often trade on the Nasdaq National Market or the Nasdaq Small-Cap Market. Knowledge of the impending public announcement of a PIPE offering by those issuers and the date and price at which the PIPE shares will be offered, is therefore information upon which trading profits may be realized.

3

9. A reasonable investor would have considered the information that each of the 19 issuers would publicly announce a PIPE offering and, in particular, the date and price of such announcement important to his or her investment decision and a significant alteration of the total mix of information available to the public.

10. The market price of the stock for each of the issuers declined when the PIPE offering was disclosed to the public.

**B.  Deephaven and Lieberman Each Owed a Duty of Trust and Confidence**

11. For each of the 19 PIPE offerings that are the subject of this Complaint, the issuer retained a broker-dealer registered with the Commission to act as placement agent for the offering. The placement agent advised Lieberman or his assistant that the issuer was conducting a PIPE offering that was nonpublic confidential information.

12. As to all 19 PIPE offerings, Deephaven and Lieberman undertook, by agreement and/or by pattern or practice, a duty of trust and confidence to maintain confidentiality and not disclose or trade on the basis of the material nonpublic information entrusted to them by the placement agents and the issuers of the PIPEs.

13. The placement agent disclosed to Lieberman or his assistant in confidence the name of the issuer offering the PIPE, general information about the nature of the issuer's business, and that the shares for the PIPE offering were expected to be priced at a discount to the market price. Lieberman or his assistant expressed interest in participating in each of the 19 offerings.

14. For four of the offerings, the placement agent followed a written telephone script to alert Deephaven to the nonpublic confidential nature of the PIPE offering. Two of the scripts were generic and used for all PIPE offerings solicited by that placement agent. The two other

4

scripts were written by the placement agent for a specific PIPE offering. Each of the four written scripts stated clearly that knowledge of the PIPE offering was confidential and could be considered material nonpublic information.

15.  For example, the script for the Factory 2-U Stores, Inc. ("Factory 2-U") PIPE offering stated:

> The existence of this proposed private placement of [Factory 2-U] common stock is highly confidential. In addition, this private placement memorandum (or term sheet) may contain, and we may orally disclose to you, other material non-public information regarding this company. You may use this information only for the purpose of evaluating a purchase by [Deephaven] of securities in this offering.

Lieberman agreed verbally to be bound by the restrictions contained in the script. Deephaven and Lieberman violated this duty when, on behalf of the Small Cap Fund, Lieberman shorted Factory 2-U's common stock on 16 days before Factory 2-U publicly announced its PIPE offering on August 20, 2003.

16.  For one of the offerings, the placement agent also sent a confirming letter to Lieberman's assistant cautioning him about his "obligation under the federal securities laws not to transact in the securities of the [PIPE issuer] when in possession of material nonpublic information." A letter dated July 8, 2003 from the placement agent for GTC Biotherapeutics, Inc.'s ("GTCB") PIPE offering to Lieberman's assistant stated:

> This Letter confirms your oral agreement that the information in this letter and enclosed herewith and the contemplated Offering of [GTCB's] Common Stock shall be kept confidential. You agree not to disclose to any third party any information contained herein, or any terms, conditions or other facts with respect to the Offering, including, without limitation, that [GTCB] is or may be contemplating the Offering. . . . We remind you of your obligation under the federal securities laws not to transact in the securities of [GTCB] when in possession of material nonpublic information.

17.     Lieberman also signed a securities purchase agreement in which GTCB warranted that it had not provided Deephaven any material, nonpublic information "except for the issuance of the [GTCB PIPE shares] and the transactions contemplated by [the GTCB securities purchase agreement]." Deephaven and Lieberman violated this duty when, on behalf of the Small Cap Fund, Lieberman shorted GTCB's common stock on 13 days before GTCB publicly announced its PIPE offering on July 30, 2003.

### C.     Deephaven and Lieberman Traded While in Possession of Material Nonpublic Information in Breach of a Duty of Trust and Confidence

18.     Lieberman, after learning about a PIPE offering from the placement agent, began placing orders to sell short the issuer's stock for the Small Cap Fund.

19.     "Short selling" includes the practice of borrowing shares of stock from a broker and selling them without owning the shares, in the hope or expectation that the share price will fall, enabling the seller to "cover the short" by delivering to the purchaser shares the seller subsequently purchases at the lower price.

20.     The placement agent notified Lieberman of the discounted price for the PIPE shares and the number of shares allocated to the Small Cap Fund.

21.     Shortly thereafter, Lieberman, or someone at his direction, signed a securities purchase agreement on behalf of the Small Cap Fund.

22.     Lieberman executed all the short sales here at issue while in possession of material nonpublic information communicated to him in confidence by the placement agent. At the time each of the short sales was executed, Lieberman believed that the issuer would shortly publicly announce a PIPE offering of shares that would be offered at a discount to the then prevailing market price of the issuer's stock.

23. Two of the PIPE securities purchase agreements signed by Lieberman contained an express warranty that the Small Cap Fund had not sold short the PIPE issuer's stock for a specific period of time before the date of the agreement. Deephaven and Lieberman breached these express warranties by shorting the PIPE issuer's stock. Moreover, Lieberman attempted to hide the short positions previously established in the Small Cap Fund by transferring them to another Deephaven fund he managed.

24. For example, the securities purchase agreement for the Neurobiological Technologies, Inc. ("NTII") PIPE offering, dated March 1, 2004 and signed by Lieberman, contained a warranty that Deephaven did not, from February 20, 2004 to at least March 1, 2004, enter into any short sales of NTII's common stock. Lieberman had, in fact, already violated this warranty when he signed the agreement. He had already sold short NTII's common stock on three separate days during the prohibited period and transferred the short positions from the Small Cap Fund to another Deephaven fund.

25. By their conduct described above, Deephaven and Lieberman breached a duty owed to the placement agent and the issuer of each of the 19 PIPE offerings.

26. As a result of Deephaven's and Lieberman's insider trading, the Small Cap Fund and another Deephaven fund made an unlawful profit.

**FIRST CLAIM – Violation of Section 17(a) of the Securities Act**
**[15 U.S.C. § 77q(a)]**

27. The Commission incorporates the allegations in paragraphs 1-26 as though fully set forth in this paragraph.

28. Deephaven and Lieberman, by the conduct described above, violated Section 17(a) of the Securities Act.

29.     Unless restrained and enjoined, Deephaven and Lieberman will continue to violate that statutory provision.

## SECOND CLAIM – Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

30.     The Commission incorporates the allegations in paragraphs 1-26 as though fully set forth in this paragraph.

31.     Deephaven and Lieberman, by the conduct described above, violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

32.     Unless restrained and enjoined, Deephaven and Lieberman will continue to violate those statutory and regulatory provisions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Commission respectfully requests that this Court enter Orders:

(i)     permanently enjoining Deephaven and Lieberman from violating Section 17(a) of the Securities Act [15 U.S.C. § 77(q)a] and Section 10(b) of the Exchange Act [15 U.S.C. § 78(j)b], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(ii)    directing that Deephaven disgorge all profits realized from the unlawful conduct alleged herein, plus prejudgment interest;

(iii)   directing Deephaven to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

8

(iv) directing Lieberman to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

(v) granting such other relief as this Court may deem just and equitable.

Respectfully Submitted,

*Kevin O'Rourke*

Paul R. Berger (DC Bar No. 375526)
Kevin O'Rourke (Trial Counsel-DC Bar No. 254920)
Mark Kreitman (DC Bar No. 260828)
Robert B. Hanson
Janene M. Smith (DC Bar No. 455639)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549-4010A
(202) 551-4442 (Tel: O'Rourke)
(202) 772-9244 (Fax: O'Rourke)
ORourkeK@sec.gov

Dated: May 2, 2006